Case number 17-5527, United States of America v. Eddie Taylor. Argument not to exceed 15 minutes per side. Ms. Coffin, you may proceed to the appellant. Good morning. I'm Jennifer Coffin, and I'm here today on behalf of Eddie Taylor, who appeals the district court's denial of his motion for a sentence reduction under Section 3582C2, Title 18. In her concurring opinion in Freeman, Justice Sotomayor set forth and described two ways that a sentence imposed pursuant to a binding plea agreement under Rule 11C1C could be based on a guideline range applicable to the offense to which the defendant pled guilty. The first way is if the plea agreement calls for the defendant to be sentenced within a specified guideline range. The second way is if the plea agreement calls for a certain term of imprisonment, such as a number of months, but does not specify that the defendant be sentenced within a particular guideline range in the plea agreement itself, but the plea agreement makes clear that the basis of that specified term is a guideline range applicable to the offense of conviction, and that term is evident from the terms of the plea agreement itself. In Freeman, Justice Sotomayor, applying this second way to get there in William Freeman's case, found that William Freeman was eligible for a sentence reduction. The plea agreement in Eddie Taylor's case is a lot like the plea agreement in William Freeman's case. The only difference is that Eddie Taylor's plea agreement does not contain an anticipated criminal history category. But that doesn't mean that his plea agreement necessarily doesn't show us that the basis of that 87-month sentence that he agreed to was based on a guideline range applicable to his offense. The first major clue and the first piece of evidence is the fact that they agreed to a sentence of 87 months. The number 87 is a very specialized number in the world, the trade, the industry, so to speak, of federal criminal sentencing. It doesn't appear anywhere at all in the entire federal criminal system except in the sentencing table in Chapter 5 of the sentencing guidelines. When you look at the terms of his plea agreement, which contains terms that show us, that make it evident, that his base offense level based on the drug quantity was 30 and that he would get a three-level downward adjustment under Section 3E1.1, another guidelines provision, his offense level would be 27. Counsel, could I ask some questions that are sort of preliminary to that from my understanding? My questions are just based on the law as it is and not on the basis of what the law might be if it changed in the Hughes case. So we're just assuming Hughes hasn't happened and doesn't happen for the moment. You agree that this is a Rule 11C plea? Yes. Well, if I look at Rule 11C, it says, and I'm 11C1C, so C1C, I guess. Agree that a specific sentence or sentencing range is the appropriate disposition of the case or that a particular provision of the sentencing guidelines or policy statement or sentencing factor does or does not apply. Those are two different things. I don't think you can coherently have both. So which one is it in this case? This case is a case that... It's either first, a specific sentence or sentencing range, or second, a particular provision of the sentencing guidelines or policy statement or factor does or does not apply. Of those, first or second, which is it? The first. It's the first. And it's a specific sentence. So it's a specific sentence, Rule 11C case. Yes. Then I'm having trouble seeing how these words in paragraph 8 are coherent because they're just blatantly inconsistent with 11C first. It says, the parties that agree that the court may impose a lawful term, any lawful fine, special... Where is it where they say that the court will do this? I'm looking at the wrong paragraph, I suppose. Doesn't the agreement say that the court will have to look at certain guideline principles and so forth in the plea agreement? Yes. Where is that? Okay. So there are several places here. That would be paragraph 8. It says that the sentence in the case will be determined by the court after it receives the pre-sentence report. The sentence determination... Where is that? Paragraph 8. That's page 4. Top of page 5. Paragraph 8, which? 8A or the whole of 8? 8C. I don't see... Okay. Determination will be based upon the entire scope of the criminal conduct, criminal history, pursuant to other factors and guidelines as set forth in the sentencing guidelines. Yes. Okay. Look at the last sentence of 8. I'm sorry it takes so long to get it. It's okay. I should have marked it. Defendant acknowledges that the sentencing determination will be based on the entire scope of the criminal conduct, dependent's criminal history, pursuant to other factors and guidelines set forth in the sentencing guidelines, and the factors set forth in 3553. If you're right that this is an 11C first part of the sentence, isn't that language nullity? I mean, it just is incoherent, isn't it? It just makes no sense. Well, obviously. Render it to make sense for me. I can't see how it makes sense. It makes sense in the same way that it made sense in William Freeman's agreement to say that his sentence would be pursuant to the guidelines. Well, in Freeman, they had to figure out what that sentence was, and so they went and looked at the building blocks for that sentence in order to figure out what sentence was agreed to. Here the sentence is agreed to. It's 87. You don't have to figure out what the sentence is. According to your reading of this as a first part of C, 11C, it's a sentence of 87 months, which means it's just not true that the criminal history and the criminal conduct and all these other factors are going to be taken into consideration, because it's either 87 or it's back to the drawing boards, right? It could be the district court can decide all this stuff whatever it wants, but it's got to say 87 or back to the drawing boards, or what am I missing? Well, it's not back to the drawing boards because the district court actually accepted the plea agreement. Of 87. Of 87. But the effect of the agreement is that this language is meaningless, because the effect of the agreement, if I understand 11C, I mean, you're the expert and I'm not, you can clarify, is you go to court, the court is presented with 87, the court takes into account what the court wants to take into account or not, and it says yes or no. If it says yes, then it's the agreement. If it says no, then the court. But I just ask then, then it seems that every reference contradicts it. That does. But including setting the offense level and including all of this business in nine that talks about getting decreases. That supports my question. I have this question. How does that make any sense? I don't understand how it makes sense. Well, to the extent that it may, and obviously our position is not that it does, but to the extent that that language somehow creates some kind of internal inconsistency or incoherence, that should be resolved in the favor of Eddie Taylor. And from Eddie Taylor's perspective, he agreed to a sentence that clearly established an offense level of 27. So what you're saying then is that it's, that's why I asked you in the first place. You're agreeing that this is an 11 C1C first type agreement for 87 months. If you do, then these words mean nothing. You could be arguing, but you're explicitly not. The other side, which is these are the operative words, and section 7 doesn't make any sense, in which case you would win on whether you win in this case, although it's kind of hard to argue that that's exactly what this meant. But I don't see how you can do both or a mixture of the two. You've got to make one argument or the other. If it's an 11 C first part of the sentence argument, then in my mind, I don't speak for my colleagues, all of this stuff is just erasable because it's just wrong. It just doesn't make sense. It's not part of it. But a lot of times you enter those agreements, but you still have to go before the judge. Now the judge is obliged to take it or leave it, but you want to encourage the judge to reach that point, and so you talk about the scoring of the guidelines because the judge is ultimately going to compare the agreed sentence to the guidelines, and so you address the guidelines hoping to move the judge to that point. Exactly. That's a hope. That's not a promise. In every sentencing, even if you agree to a specific sentence, as in William Freeman's case, as in Kenston Taylor's case, as in, by the way, Antonio Gowen's case. His case was consolidated with Freeman's. The district court still has to actually go through the process of calculating the guideline range, and the parties make this agreement to this specific term knowing that that's what's going to take place. Everybody knows that that's going to take place. Could I reframe this a little bit? Yes. And maybe just start with my experience because I actually did sentencing, and occasionally we would have C1C, please, but not very often. The problem, it seems to me, is you want to rely on paragraph 8 to convince us that this was a guideline sentence, even though there wasn't a specific range in the plea agreement. But paragraph 8, as Judge Rogers is asking about, seems to be inconsistent with the language in C1C itself. So we're trying to figure out whether you can have your cake and eat it too here because they do seem to be inconsistent. Do you understand the problem? I do understand the problem, but we're still... So how can you rely upon the end of 8 and rely upon the first clause in C1C? That's what he's trying to get you to answer. The answer would be that when we actually look to see whether this plea agreement, the terms of this plea agreement, evidence the intent of the parties, then what C1C tells you you can or cannot do in the plea agreement doesn't really answer the question. The question is what do the terms say? And Eddie Taylor and the government together agreed that his sentence, and it's not just paragraph 8, by the way. Eddie Taylor does not just rely on paragraph 8. Paragraph 8 just adds to the pieces of evidence in the plea agreement that the parties intended for him to be sentenced within the guideline range that applied. Stop right there for just a second, if you would, going back to the point or the question that Judge White was asking you. The case law says, I think, even in a C1C plea case, you still have to do a guideline calculation and you have to do it correctly. Yes. So we start with that. Yes. Then you go on, and if it's not a C1C sentencing, you sentence it based on the factors in 18 U.S.C. 3553. That's what the end of paragraph 8 says. If it's a C1C agreement, you don't do that. You simply at that point say, I accept, in this case, the 87 months, or I don't. If you accept it, done deal. You don't accept it, he can withdraw his plea and he can start over. Am I right about all that? That's true, but that would lead me to say one more thing, which is to go to Judge Rogers and to you together, which is that I am not sure that the parties or any case law states that you can't have a plea agreement that both agrees to a specific sentence and also stipulates that certain provisions of the guidelines will or will not apply. Those kinds of plea agreements occur all the time, and I don't know any case law that says you can't. How do they make sense, though? What? How do they make sense? Because if you go through and you either do or don't, you're the district court and you either do or don't comply with those binding aspects of it, which what I would call a C1C second part of the sentence, if after having done all that you still have to conform to the 87 anyway. You're kind of into paragraph 9 is where you're taking it. Am I? Yes. Okay, let's go to paragraph 9. It's a specific agreement about whether it's 16 or higher, you get a two-level reduction for acceptance of responsibility, so on and so forth. That's in the guideline calculation, but that doesn't determine the sentence because it's an agreed-upon sentence of 87. Yes, but what our point is- 87 could have been based on the guidelines. There's no question about that. It could have been. Or it could have been drawn out of thin air, too. That is highly unlikely. Maybe so, but we're trying to fit it in with either Kennedy or Sotomayor. I'm fitting it in with Sotomayor, and that is that paragraph 9 is another piece of evidence to show the intent of the parties. It shows that the entire agreement is intended to result in a sentence that's within the applicable guideline range in his case, and I see that I'm out of time unless you have other questions. Why wouldn't you be arguing Kennedy? Kennedy says, as I understand it, that by definition a binding plea agreement is calculated pursuant to the guidelines. I'm not arguing Kennedy because in this court Justice Sotomayor's concurring opinion is what controls me, although, of course, we also preserve the argument that under Kennedy's- Well, you're arguing Sotomayor because you think McNeese tells us to do that, but that's going to be determined by Hughes, right? Exactly. So we preserve that argument. I asked you to do it with Sotomayor.  Is there a circumstance that you can think of under which Hughes won't essentially provide the answer to this case? You mean this case or a different case? This case. If we wait around, just as a for instance, if we wait around for the answer in Hughes, will that resolve this case? If the Supreme Court holds or adheres to the view in Hughes that Justice Sotomayor's concurring opinion controls and that the terms of the plea agreement are all that's relevant to answer this question, I believe that the court will also clarify exactly what that means. But you still may lose under McNeese, which is still binding on this panel, unless somehow the Supreme Court says the analysis in McNeese was wrong. Our expectation is that if Hughes comes out to still adhere to Justice Sotomayor's position, then the clarification will benefit Eddie Taylor. We'll have to wait for that. Of course. Thank you. Good morning, Your Honors. May it please the Court, Bill Roach for the United States. Defendant is not eligible for a sentence reduction because his 87-month term of imprisonment is not based on a sentencing range that has been subsequently reduced by the sentencing commission. Well, it sure looks like it does, and it looks like it does because you put the language in paragraph 8 and 9 in there. If you're going to do a C1C plea, you shouldn't have that in there, right? I agree, Your Honor. Now, whether you say it was inadvertent or not, it's in there. It is, Your Honor. It's in there, he signed it, and you're bound by it. We are, Your Honor. We absolutely are bound by it. It is an unfortunate, the plea agreement is not. We're bound by something that's just not true. I mean, it says the sentencing determination will be based on the entire scope of the conduct, the criminal history, and other factors and guidelines set forth in the guidelines. That's just, it's like saying A and B, we're bound by A and not A. That can't be, can it? They are contradictory, Your Honor, and I mean, we're not. So what sense does it make to say, you know, I'm bound by the statement that Joe was in the room at 9 p.m. and the statement that Joe was not in the room at 9 p.m.? That can't be, right? I mean, one of them. I agree, Your Honor. They are in direct conflict with one another. How about a better way to say it is you're stuck with the language, whether you're bound by it or not. That's correct. We're stuck with the language. We're not running from it. The language you're stuck with seems to suggest that it was a guideline sentence. I disagree, Your Honor, respectfully. I think that Paragraph 7 clearly sets forth that it's a sentence based on a specific term of imprisonment. Paragraph 8 certainly refers to the guidelines, but it doesn't say that the sentence will be, it doesn't say the sentence will be based on the sentencing guidelines. In other words, it doesn't fit within the framework that this case. Can you also read 8 as a recognition of exactly what Justice Kennedy was saying, which is that you can, the parties can agree to a specific sentence, and the defendant may be able to withdraw if the court doesn't agree, but ultimately, no matter what happens, the sentence is ultimately going to be determined by the court, and the court uses this information, the entire scope of the defendant's conduct, the history, other factors, the guidelines, and if it turns out that after going through that analysis, it's 87 months, great, and if it's not, you move on. That's correct, Your Honor. The court can consider the sentencing guidelines, and under this court's framework, it has the plea agreement itself. So the four corners of the plea agreement have to expressly state or expressly rely on a sentencing range. Do you claim that the four corners have to direct you to a specific guidelines range within the four corners, or that it just has to be discernible in some way? Under this court's precedent, the four corners of the plea agreement have to contain, quote, all of the tools necessary. So it doesn't have to say it's this. It's just you have to be able to figure it out from the four corners. That's correct, Your Honor, and that's what this court looked to in the Kinson-Taylor case that the defendant relies on. Similarly, that's exactly what happened in the Freeman case, where Justice Sotomayor, in her concurrence, recognized that the plea agreement contained a base offense level. And what's missing here is the criminal history category. That's true, Your Honor. And the reason, in general sentencing, that you don't necessarily agree upon that at the time you enter into a plea agreement is the probation officer hasn't done the investigation of the criminal history category. And what the government and the defense lawyer think is the person's record is oftentimes incomplete. Am I saying that incorrectly? No, you're absolutely correct, Your Honor. That's absolutely correct, and that's one of the reasons why the Kinson-Taylor plea agreement fits within the... So if it said drug quantity and it had all the other adjustments and it told us the criminal history category, even though it didn't say the range that was yielded by that information, it would probably be enough. Under Sotomayor's... But we don't have the range, and we don't have all the information we need to determine the range. That's absolutely correct, Your Honor. We also submit that the plea agreement, while it references a drug quantity, it doesn't stipulate that the parties agree on that drug quantity. It simply says that the 875 grams of heroin is a, quote, conservative estimate of the defendant's responsibility. So it's also quite possible that the probation officer could have determined that the defendant was responsible for a higher quantity of drugs. So we don't... I'm getting this way off on a tangent here. I understand that, so let's not spend all that time on it. We would like to decide cases in a way that just doesn't lead to an inevitable 2255. So assuming that this gentleman doesn't get this reduction, why isn't this a great 2255 down the road for ineffective assistance for such a crappy plea agreement? When it seems like all other indication is it was a guideline agreement. Right, Your Honor. And it's a tough question to answer now in terms of having to respond to a 2255 down the road. I think that the parties, based on the sentencing memorandum, based on defendant's sentencing memorandum, the parties did negotiate. They did agree on this 87th month term of imprisonment. So our position at this point would be that it was a benefit to both parties to agree on a sentence that the defendant felt was fair and that the United States felt was fair. But I'm guessing you can't say in good conscience standing here that that number was just pulled right out of the air, as opposed to being the bottom of what you anticipated to be the guideline range. I'm not exactly sure. I think that the parties probably may have looked to the guideline range. They may have guessed on what the criminal history category, what they thought it was going to be. But even if that were the case, Your Honor, I think it's still within the four corners of the agreement. It doesn't fall within the framework set forth by Justice Sotomayor and this course in McNeese. The plea agreement has to be the plea agreement itself. It contains all of the tools necessary to calculate a guideline sentence. And here the plea agreement just simply doesn't contain all of the tools necessary. Can I ask a question? When you say in your brief that language was inadvertently not stricken, are you talking about the last sentence of 8 or also 9? Yes, Your Honor. I think the brief only mentions Paragraph 8, but we would also say that Paragraph 9 should have been stricken. It's incoherent as well, right? Yes, Your Honor. It's part of a form plea agreement that our district uses. And if we do an 11C1C agreement, we will generally take out Paragraph 8, which has general references to the sentencing guidelines, and also Paragraph 9, which incorporates various elements of the calculation under a guideline calculation. Exactly, Your Honor. So if they're left in by accident, it seems sure you have to take him into account, but it strikes me that they're not there to indicate how the 87 was arrived at. They're in there because at the time they were put in there, they were going to be used to arrive at whatever the court might arrive at, which it's never going to arrive at. That's right. Whereas normally what you're looking for as evidence of how the 87 was arrived at is to say we agree to the 87 because we agree that it has these elements in it under the guidelines. That would be a sotomayor based upon kind of plea agreement. Well, I think I agree with the first part of your question, Your Honor. I'm not sure I quite follow the second in terms of the second part. The second part is if you had a different kind of Paragraph 9 that said instead this is what the court is going to do. It said this is what we did to arrive at the 87. We looked at this element, this element, this element, came to the 87. Then that's what the sotomayor's opinion suggests is based upon, right? Had that been the case, and we contest that that is the case here, it would more cleanly fit in the first part of Justice Sotomayor's analysis where it gives the court discretion to sentence the defendant within a range. Now here Paragraph 7 clearly directs the court to either sentence the defendant to 87 months, reject the plea agreement, or take the plea agreement under consideration until ... Fair enough. I understand. The only thing that I want to make sure we clarify, and I think this might have been what Judge White was getting to too, you've got to do the guideline calculation first. The reason why a defendant would want adjustments in the plea agreement, even if it's a C1C plea agreement, that ended up with a lower guideline range, even though it's a C1C, is because that's one of the things the judge is going to take into consideration as to whether to accept the plea agreement. Correct. So if you had a guideline sentence that said life, and you entered into a plea agreement that said six months, chances are it's going to be rejected. So you're going to want to guide the court by an agreed upon series of adjustments to get the guideline sentence to be within at least a range of reasonableness of whatever the accepted plea is under C1C. Am I saying that right? That's exactly right, Your Honor. So there is some relevance to putting what seems to be guideline stuff in there. Yes. Even though it's an agreed upon number, which might have been based on the guideline, might have been plucked out of thin air, but at least then you can relate the two together. That's exactly right, Your Honor. That's exactly what happened in McNeese, where this court held the defendant was not eligible for a sentence reduction. It turned out down the road that the parties agreed on 63 months. That sentence was based on defendant having a three-level reduction for substantial assistance, for acceptance of responsibility, and then a two-level enhancement for being a leader. That stuff was the parties assumed that would be the case, and the sentence in hindsight was related to the guidelines, but the plea agreement, there was nothing within the four corners of the plea agreement that expressly tied that sentence to a sentencing range. This court held that for that reason, the defendant was not eligible for a sentence reduction. In McNeese, there was, if I understand, there was no reference to the guidelines. That's correct. That's correct. There was no reference to the guidelines at all. That is one distinguishing factor between the plea agreement here and the plea agreement in McNeese. Unfortunately, we do have paragraph 8. It does reference the sentencing guidelines in general, but McNeese is not limited to the particular facts on which the case was decided. It is controlling, the holding is controlling in this case, and based on the language in McNeese that requires the plea agreement to have all of the tools necessary to conclude that the sentence in the plea agreement was based on a sentencing range, our case just simply does not fit within this court's framework in McNeese. For that reason, the district court got this case correctly, and we would ask this court to affirm the district court's judgment. Am I right that in this case, from the government perspective, that if the Supreme Court in Hughes just simply says Sotomayor's opinion controls and doesn't further elaborate on what that opinion said, then you would win under McNeese because we're bound by McNeese? That's correct, Your Honor. The way that the defendant could win is either the Supreme Court says, no, regardless of what we did before, we're now agreeing with Kennedy, what was Kennedy's plurality opinion. In that case, Taylor would win, would he not? He would be eligible for a sentence reduction. Well, yeah, the judge may or may not grant it, but the judge would have the authority to grant it that the judge believed he did not have the authority in this case. That is correct, Your Honor. If the Supreme Court says Kennedy, it would have to go back for the judge to decide whether to exercise his discretion. That's correct, Your Honor. Then the other path to win is the Supreme Court says Sotomayor and clarifies what that test is in such a way as to render McNeese overruled. That's correct, Your Honor. McNeese would have to be overruled by the Supreme Court. Okay, thank you. That's very helpful. Thank you. Do you agree with that attempt at looking into the crystal ball here? Actually, not exactly. It would make it a lot easier for Eddie Taylor to win if the Supreme Court, even if it stuck with Sotomayor's opinion, clarified and made it clear that McNeese was not controlling. But Eddie Taylor's position is that he wins even under McNeese. And the reason for that is his plea agreement is very different from the plea agreement in McNeese. McNeese, as Judge White pointed out, nowhere references the guidelines. Eddie Taylor's plea agreement references the guidelines in several different ways, not just paranoid faith. The government did say in the sentencing hearing that it was based upon the guidelines, even though it's not in the plea agreement itself. Well, you mean in McNeese? Yes. Right, but in this case, we have some evidence at sentencing, and although we don't have the transcript because we were operating under the idea that you can't use anything outside of what's in the plea agreement, we know that the parties negotiated with the expectation that he would get a sentence within the guideline range because of the sentencing proceedings. So you think you can win by distinguishing McNeese, basically? Well, footnote 9 of Sotomayor's opinion. She takes on Chief Justice Roberts' various scenarios, and she particularly says the only scenario that clearly would mean that the defendant wasn't eligible is if the plea agreement nowhere mentions the guidelines. We don't have that. That was McNeese. We have something more than that. So what I would further add is the government, Mr. Roach here said that Kenston-Taylor had all the tools, but Kenston-Taylor did not have an anticipated criminal history category, just as Eddie Taylor doesn't have a criminal history category. And yet, according to the government, the correct test was applied. Kenston-Taylor was eligible. And why would it be that Eddie Taylor is not eligible when his plea agreement not only is almost identical, but he has that additional language that suggests that everyone was thinking about the guidelines? The last thing I'd like to say is I brought up Antonio Goins, who was the case that was consolidated with William Freeman's case, and he had no criminal history category. And the Supreme Court granted his petition for certiorari in light of Freeman, and this court and Judge Rogers and Judge White, who were both, I believe, on that panel, quickly remanded it to the district court where it sat until after this court adopted Sotomayor's opinion, and the government in that case and the court in that case agreed to a reduction, and there was no criminal history category. But McNeese, I mean, I think McNeese is often cited for saying, well, McNeese says a bunch of things, some directly inconsistent with Freeman, but it does say that you have to be able to figure it out from the four corners, and that's consistent with Justice Sotomayor. I agree with that. So where do you get it in your agreement? From the identification of the drug quantity, which is stated in nothing but guideline speak. It only means one thing. It's not just that it said 875 grams. It said more than 700 grams, which is the trigger for base offense level 30. It also said he gets three levels. And the 87 months is at the bottom of just two of the guideline ranges that apply to offense level 27. And Mr. Taylor had a felony of conviction. The only way to be in criminal history category one is if you have one or fewer criminal history points. So no one could have thought that he would have been in criminal history category one. So you can kind of reverse engineer from the sentencing table and from the actual terms of the plea agreement that everybody believed that 87 months was the bottom of his applicable guideline range. And I see that I'm out of time. So we would ask that this court reverse the order of the district court, remand the case for further proceedings, or hold it and wait for Hughes. Thank you. Thank you. Thank you, counsel. The case will be submitted, and please call the next case.